BROWNE GEORGE ROSS LLP
Peter W. Ross (State Bar No. 109741)
  pross@bgrfirm.com
Keith J. Wesley (State Bar No. 229276)
  kwesley@bgrfirm.com
Christopher M. Kolkey (State Bar No. 300206)
  ckolkey@bgrfirm.com
2121 Avenue of the Stars, Suite 2400
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Plaintiff Osama Ahmed
Fahmy

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSAMA AHMED FAHMY, an individual,<br><br>              Plaintiff,<br><br>      vs.<br><br>LIVE NATION ENTERTAINMENT, INC., a Delaware corporation, and Does 1 through 10, inclusive,<br><br>              Defendants. | Case No. 2:15-cv-01158 CAS (PJWx)<br><br>The Hon. Christina A. Snyder<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT LIVE NATION ENTERTAINMENT, INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) OR STAY THE ACTION PENDING RESOLUTION OF RELATED CASE; DECLARATION OF KEITH J. WESLEY**<br><br>Date:        June 8, 2015<br>Time:        10:00 a.m.<br>Courtroom:  5 |

524684.2

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION..................................................................... 1

II. STATEMENT OF FACTS........................................................ 3

III. PLAINTIFF STATES CLAIMS FOR DIRECT, CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT AGAINST LIVE NATION.............................................................................. 4

 A. Legal Standard on a Rule 12(b)(6) Motion to Dismiss........................... 4

 B. The Evidence in Support of Defendant's Motion Should be Disregarded or Stricken. ...................................................... 5

 C. Plaintiff States a Claim for Direct Copyright Infringement. .................. 5

  1. Sponsors of infringing public performances can be liable for direct copyright infringement. ................................. 6

  2. Live Nation sponsored the infringing performances; therefore it is potentially liable....................................... 7

  3. Live Nation's cases are inapposite. .............................. 8

 D. Plaintiff States a Claim for Contributory Copyright Infringement. ....... 8

  1. Plaintiff sufficiently pled knowledge of Jay-Z's infringement....................................................... 9

   a. The requisite knowledge includes constructive knowledge and willful blindness............................. 9

   b. The allegations of knowledge are adequate. ...................... 9

   c. Live Nation's cases are inapposite.................................. 10

  2. Plaintiff sufficiently pled that Live Nation induced, caused and materially contributed to Jay-Z's infringement................. 12

   a. Live Nation applies an overly stringent legal standard. ..................................................... 12

524684.2

-i-

1

**TABLE OF CONTENTS**
(cont'd)

2

**Page**

3       b.   The allegations of material contribution are
              adequate.............................................................. 12

4

5       c.   Live Nation's cases are inapposite. ................................. 13

6    E.   Plaintiff States a Claim for Vicarious Copyright Infringement............ 14

7       1.   Plaintiff sufficiently pled Live Nation's right and ability to
              supervise Jay-Z's infringing activity. .......................................... 14

8

9       2.   Plaintiff sufficiently pled Live Nation's direct financial
              interest in the infringing activity. ................................................. 15

10

11  IV.  THE COURT SHOULD DENY THE REQUEST TO STAY THIS
         ACTION. ...................................................................................... 17

12

13   A.   Indefinite Stays are Rarely Appropriate. ............................................. 18

14   B.   Live Nation's Request Is Based on a Highly Unlikely Scenario.......... 18

15   C.   The Factors Cited by Live Nation Weigh Against a Stay. ................... 20

16  V.   CONCLUSION. ............................................................................. 22

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO DEFENDANT LIVE NATION ENTERTAINMENT, INC.'S MOTION
TO DISMISS OR STAY THE ACTION

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*A&M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ................................................................. 10, 13

*Actuate Corp. v. Fid. Nat'l*,
   No. C-14-02274-RS, 2014 WL 4182093 (N.D. Cal. Aug. 22, 2014) ........................ 13

*Adobe Sys. Inc. v. Canus Prod. Inc.*,
   173 F. Supp. 2d 1044 (C.D. Cal. 2001) ................................................................ 17

*Arpin v. Santa Clara Valley Transp. Agency*,
   261 F.3d 912 (9th Cir. 2001) ................................................................................. 5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................. 9

*Blendingwell Music, Inc. v. Moor-Law, Inc.*,
   612 F. Supp. 474 (D. Del. 1985) ........................................................................ 6, 7

*Breier v. Northern Cal. Bowling Proprietors' Ass'n*,
   316 F.2d 787 (9th Cir. 1963) ............................................................................... 17

*Broad. Music, Inc. v. It's Amore Corp.*,
   No. 3:08CV570, 2009 WL 1886038 (M.D. Pa. June 30, 2009) ......................... 6, 7

*Broad. Music, Inc. v. Kujo Long, LLC*,
   No. 1:14-CV-00449, 2014 WL 4059711 (M.D. Pa. Aug. 14, 2014) ...................... 7

*Broughton v. Cutter Labs.*,
   622 F.2d 458 (9th Cir. 1980) ................................................................................. 5

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.*,
   498 F.3d 1059 (9th Cir. 2007) ............................................................................. 18

*Dreamland Ball Room, Inc. v. Shapiro, Bernstein & Co.*,
   36 F.2d 354 (7th Cir. 1929) ............................................................................. 1, 16

*Ellison v. Robertson*,
   347 F.3d 1072 (9th Cir. 2004) ............................................................................... 6

*ESG Capital Partners LP v. Stratos*,
   22 F. Supp. 3d 1042, 1046 (C.D. Cal. 2014) ..................................................... 20

# <u>TABLE OF AUTHORITIES</u>
## (cont'd)

**Page(s)**

*Fleming v. Coverstone,*
    2010 WL 4955546 (S.D. Cal. Dec. 1, 2010)..........................................................................18

*Fonovisa, Inc. v. Cherry Auction, Inc.,*
    76 F.3d 259 (9th Cir. 1996) ................................................8, 12, 13, 14, 16, 17

*Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.,*
    443 F.2d 1159 (2d. Cir. 1971)......................................1, 10, 12, 13, 15

*Herbert v. Shanley Co.,*
    242 U.S. 591 (1917)..........................................................................16

*Hermeris, Inc. v. Brandenburg,*
    No. 10-2531-JAR, 2011 WL 231463 (D. Kan. Jan. 23, 2011) .......................8

*In re Interactive Network, Inc. Securities Litigation,*
    948 F. Supp. 917 (N.D. Cal. 1996) ..........................................................5

*Jellinek v. Advance Products & Systems, Inc.,*
    2013 WL 692969 (S.D. Cal. Feb. 26, 2013) .............................................20

*Leyva v. Certified Grocers of Cal., Ltd.,*
    593 F.2d 857 (9th Cir. 1979) ..................................................................18

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.,*
    658 F.3d 936 (9th Cir. 2011) ..............................................................12, 13

*Luvdarts, LLC v. AT&T Mobility, LLC,*
    710 F.3d 1068 (9th Cir. 2013) .......................................................9, 11, 15

*Miller v. Facebook, Inc.,*
    No. C10-00264, 2010 WL 1292708-WHA (N.D. Cal. Mar. 31, 2010) ...............8, 15

*Muench Photography, Inc. v. Pearson Educ., Inc.,*
    No. 13-cv-03937-WHO, 2013 WL 6172953 (N.D. Cal. Nov. 25, 2013) ...............13

*Noll v. Carlson,*
    809 F.2d 1446 (9th Cir. 1987) ..................................................................5

*Ortega Trujillo v. Conover & Co. Communications, Inc.,*
    221 F.3d 1262 (11th Cir. 2000) ..............................................................18

*Perfect 10, Inc. v. Amazon.com, Inc.,*
    508 F.3d 1146 (9th Cir. 2007) ..................................................................15

524684.2

-iv-

**TABLE OF AUTHORITIES**
(cont'd)

**Page(s)**

*Polygram Int'l Pub., Inc. v. Nevada/TIG, Inc.,*
  855 F. Supp. 1314 (D. Mass. 1994) ...................................................................... 15, 16

*Pryor v. Warner/Chappel Music, Inc.,*
  No. 13-cv-04344-RSWL, 2014 WL 2812309 (C.D. Cal. June 20, 2014) ................ 11

*Range Road Music, Inc. v. East Coast Foods, Inc.,*
  668 F.3d 1148 (9th Cir. 2012) .................................................................... 1, 6, 14, 16

*Religious Tech. Ctr. v. Netcom On-Line Commc'ns Svcs, Inc.,*
  907 F. Supp. 1361 (N.D. Cal. 1995) ........................................................................ 8

*Sanrio, Inc. v. Ronnie Home Textile Inc.,*
  2015 WL 1062035 (C.D. Cal. Mar. 10, 2015) ........................................................ 21

*Scheuer v. Rhodes,*
  416 U.S. 232 (1974) .................................................................................................. 5

*Standard Havens Products, Inc. v. Gencor Indus., Inc.,*
  953 F.2d 1360 (Fed. Cir. 1991) .............................................................................. 20

*Tarantino v. Gawker Media,*
  LLC, No. 2:14-cv-0063-JFW, 2014 WL 2434647 (C.D. Cal. Apr. 22, 2014) ........ 13

*Twentieth Century Music Corp. v. Aiken,*
  422 U.S. 151 (1975) ........................................................................................ 1, 6, 12

*United States v. City of Redwood City,*
  640 F.2d 963 (9th Cir. 1981) .................................................................................... 5

*Usher v. City of Los Angeles,*
  828 F.2d 556 (9th Cir. 1987) .................................................................................... 5

*Viesti Assocs., Inc. v. Pearson Educ., Inc.,*
  No. 12-cv-02240-PAB, 2013 WL 4052024 (D. Colo. Aug. 12, 2013).................... 13

**FEDERAL STATUTES**

Copyright Act.................................................................................................... 1, 6

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ............................................................ 4, 5

Federal Rule of Civil Procedure 15(a)(2) .............................................................. 17

1

## <u>TABLE OF AUTHORITIES</u>
### (cont'd)

2                                                                                        <u>Page(s)</u>

3   Federal Rules of Civil Procedure 26 ........................................................................3, 21

4   **<u>OTHER AUTHORITIES</u>**

5   2 William F. Patry, Copyright Law & Practice §1147................................................12

6   3 Copyright Throughout the World § 41:46 (2014)....................................................11

7   3 Melville B. Nimmer, Nimmer on Copyright, §12.04[A][2] .....................................16

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO DEFENDANT LIVE NATION ENTERTAINMENT, INC.'S MOTION
TO DISMISS OR STAY THE ACTION

## I.     **INTRODUCTION**.

It is hornbook copyright law that where an infringing song is performed at a concert, the promoter of the concert may be liable for copyright infringement.[1] Although courts have varied in their categorization of the nature of the copyright infringement – i.e., direct or contributory or vicarious – they unanimously agree that the promoter may be just as liable as the performer.

This may come as a surprise to a reader of the motion to dismiss ("Motion") filed by defendant Live Nation Entertainment, Inc. ("Live Nation"). For reasons unknown, the Motion neglects to mention the line of cases that is directly on point. When the governing case law that Live Nation ignores is applied to the allegations herein, it is beyond dispute that the complaint adequately pleads a copyright infringement claim against Live Nation.

Live Nation's alternative request for a stay may have some initial facial appeal. But a closer examination of the reasoning underlying the request exposes it as specious. Live Nation's reasoning goes as follows:

---

[1]   E.g., *Range Road Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148, 1153 (9th Cir. 2012), quoting *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 157 (1975) ("An orchestra or individual instrumentalist or singer who performs a copyrighted musical composition in such a public place without a license is thus clearly an infringer under the [Copyright Act]. The entrepreneur who sponsors such a public performance for profit is also an infringer—direct or contributory.") (emphasis added); *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1161-62 (2d. Cir. 1971) ("[I]t has long been held that one may be liable for copyright infringement even though he has not himself performed the protected composition. For example, a person who has promoted or induced the infringing acts of the performer has been held jointly and severally liable as a 'vicarious' infringer, even though he has no actual knowledge that copyright monopoly is being impaired.") (emphasis added); *Dreamland Ball Room, Inc. v. Shapiro, Bernstein & Co.*, 36 F.2d 354, 355 (7th Cir. 1929) ("The authorities are, we believe, unanimous in holding that the owner of a dance hall at whose place copyrighted musical compositions are played in violation of the rights of the copyright holder is liable, if the playing be for the profit of the proprietor of the dance hall.").

524684.2

-1-

1    • The related *Jay-Z* case will proceed to trial in October 2015;

2    • The verdict in the *Jay-Z* case will tell us whether the allegedly

3        infringing work at issue (*Big Pimpin'*) actually infringes plaintiff's

4        copyright;

5    • If *Big Pimpin'* doesn't infringe, then Live Nation cannot be held liable

6        for promoting concerts at which it was performed;

7    • Waiting a few months to see what happens in *Jay-Z* could potentially

8        save the parties money and the Court time.

9    Live Nation's reasoning is based on a possible scenario that is almost certain

10   not to occur.  More specifically, Live Nation assumes that all of the following will

11   happen:

12   • The *Jay-Z* case will actually proceed to trial in October 2015, as

13       opposed to settling before or during trial or being continued.

14   • The verdict in the *Jay-Z* case will be conclusive and binding herein –

15       i.e., the *Jay-Z* case will not settle after the trial and will not be

16       appealed.

17   • The burden in litigating this case between now and October 2015 will

18       be great.

19   The chances of the scenario underlying Live Nation's stay request actually

20   occurring is almost nil.  It is nearly certain that the *Jay-Z* case will either (a) settle at

21   some point (whether before, during, or after trial), or (b) be appealed.

22   • If scenario (a) occurs, then this case has been delayed for no reason.

23       No finding in the *Jay-Z* case will be binding herein, and the parties will

24       be starting from scratch months or even years later.

25   • If scenario (b) occurs, then, based on recent experience, a ruling from

26       the Ninth Circuit will be issued no sooner than 2018.  And there is no

27       guarantee the ruling will control herein – e.g., the judgment could be

28   524684.2

OPPOSITION TO DEFENDANT LIVE NATION ENTERTAINMENT, INC.'S MOTION
TO DISMISS OR STAY THE ACTION

1    reversed, or not dispose of Live Nation's potential liability.  Thus, this

2    case will be delayed for years, for the purpose of waiting for an

3    appellate ruling that may or may not control the outcome of this case.

4    Finally, the prejudice to Live Nation is the case proceeds is not great.  Due to

5    Live Nation's Motion and the automatic stay of discovery under Rule 26 of the

6    Federal Rules of Civil Procedure, the activity in this case between now and October

7    will be modest.  And if the *Jay-Z* case proceeds through a full appeal, it is no

8    exaggeration that few persons or entities in this country are as well positioned as

9    Live Nation to weather the storm of litigating this case concurrently with that

10   appeal.  Declaration of Keith J. Wesley, Ex. A (Live Nation 10-K statement

11   showing revenues in 2014 in excess of $6.8 billion and assets in excess of $5.9

12   billion).  There is no reason to treat Live Nation differently than every other

13   defendant in a federal civil lawsuit.

14   For these reasons, explained in more detail below, Live Nation's Motion

15   should be denied.

16   **II.    STATEMENT OF FACTS.**

17   On February 18, 2015, Plaintiff filed suit against Live Nation, alleging

18   copyright infringement.  Because, as described above, courts have varied in their

19   characterization of the claim applicable to the circumstances herein, Plaintiff pled

20   claims for direct infringement, contributory infringement and vicarious

21   infringement.  (Compl. ¶¶ 33-66.)

22   The Complaint alleges that Egyptian composer Baligh Hamdy ("Hamdy")

23   authored the original musical composition entitled *Khosara, Khosara*, registering

24   the work in 1960 under Egyptian law.  (Compl. ¶¶ 7 and 10.)  Plaintiff, Hamdy's

25   heir, now jointly owns the copyright in *Khosara, Khosara.*  (Compl. ¶ 12.)  Around

26   1999, Timothy Mosley came into possession of a recording of *Khosara, Khosara*,

27   played the recording for Jay-Z, and shortly thereafter they created and recorded the

28

524684.2

-3-

1  rap song entitled *Big Pimpin'*.  (Compl. ¶¶ 17-18.)  *Big Pimpin'* consists of a

2  significant portion of the *Khosara, Khosara* composition and is therefore an

3  unauthorized derivative work that infringes upon the *Khosara, Khosara* copyright.

4  (Compl. ¶¶ 19-20.)

5       The Complaint further alleges, on information and belief, that Live Nation,

6  one of the largest sponsors, producers and promoters of live concerts in the world,

7  entered into an agreement with Jay-Z in or around April 2008.  (Compl. ¶¶ 22-23.)

8  On information and belief, the agreement was for Live Nation to sponsor, promote,

9  facilitate and/or finance Jay-Z's live concerts and tours for the next ten years.

10  (Compl. ¶ 23.)  Since partnering with Jay-Z, Live Nation has sponsored and

11  promoted Jay-Z and his tours and performances, sold Jay-Z concert tickets and

12  merchandise, and assisted in organizing and producing Jay-Z tours and concerts.

13  (Compl. ¶ 24.)  On information and belief, at each concert from 2008 to present,

14  Jay-Z has performed *Big Pimpin'*, or a variation thereof.  (Compl. ¶ 27.)  Moreover,

15  on information and belief, Live Nation owned and/or had exclusive booking rights

16  at one or more of the venues at which Jay-Z publicly performed *Big Pimpin'*.

17  (Compl. ¶ 28.)  Live Nation has profited substantially from Jay-Z's infringing

18  performances of *Big Pimpin'*.  (Compl. ¶ 31.)

19       On April 16, 2015, Live Nation filed a Motion to Dismiss, pursuant to Federal

20  Rule of Civil Procedure 12(b)(6), or in the alternative, a Motion to Stay, pending

21  resolution of a related action.

22  **III.   PLAINTIFF STATES CLAIMS FOR DIRECT, CONTRIBUTORY**

23  **AND VICARIOUS COPYRIGHT INFRINGEMENT AGAINST LIVE**

24  **NATION.**

25  **A.   Legal Standard on a Rule 12(b)(6) Motion to Dismiss.**

26       The issue that must be decided on a motion to dismiss is not whether a

27  plaintiff will prevail in the action, but whether he is entitled to offer evidence in

28

524684.2

-4-

support of his claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  In deciding this issue, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  Even if the face of the pleading suggests that the chance of recovery is remote, the Court must allow the plaintiff to develop his case at this stage of the proceedings. *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

If the Court dismisses the complaint, it must decide whether to grant leave to amend. *In re Interactive Network, Inc. Securities Litigation*, 948 F. Supp. 917, 919 (N.D. Cal. 1996).  Generally leave to amend is only denied if it is clear "that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (quoting *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980)).

## B.   The Evidence in Support of Defendant's Motion Should be Disregarded or Stricken.

It is a basic tenet of federal civil procedure that the court cannot consider material outside the complaint in ruling on a Rule 12(b)(6) motion. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).  Live Nation and its experienced counsel (along with first-year law students across the country) know this rule.  Apparently though, Live Nation simply could not help itself.  The Motion attaches excerpts from a deposition of a Live Nation representative taken in the *Jay-Z* case. (Motion at 14:12-28, Ex. A.)  Live Nation's transparent attempt to color this Court's views of the merits of Plaintiff's claim by violating a fundamental procedural rule should not be condoned.  The deposition testimony should be disregarded and/or stricken.

## C.   Plaintiff States a Claim for Direct Copyright Infringement.

Live Nation is correct that to state a plausible claim for direct copyright

524684.2

-5-

1    infringement, Plaintiff need only allege the following elements: "(1) ownership of a

2    valid copyright; and (2) that the defendant directly violated the copyright owner's

3    exclusive rights under the Copyright Act." *Ellison v. Robertson*, 347 F.3d 1072,

4    1076 (9th Cir. 2004).  Live Nation is incorrect in arguing that Plaintiff did not

5    adequately plead Live Nation's violation of Plaintiff's exclusive rights under the

6    Copyright Act.  Live Nation's position – i.e., that Live Nation had to perform the

7    infringing work to be held directly liable – is contrary to the law.

8                    **1.    Sponsors of infringing public performances can be liable for**

9                    **direct copyright infringement.**

10         As explained in Section 1, *supra*, the United States Supreme Court has stated

11   that sponsors of infringing public performances may be liable for direct copyright

12   infringement. *Aiken,* 422 U.S. at 157 ("The entrepreneur who sponsors such a

13   public performance for profit is also an infringer – *direct* or contributory.")

14   (emphasis added); see also *Range Road Music*, 668 F.3d at 1153 (same).  Courts

15   applying this principle have held that proprietors of the premises where infringing

16   performances occur are sponsors subject to direct infringement claims. *Broad.*

17   *Music, Inc. v. It's Amore Corp.*, No. 3:08CV570, 2009 WL 1886038, at *5 (M.D.

18   Pa. June 30, 2009).  Also considered sponsors of infringing performances are

19   persons or entities who advertise and schedule the performance, charge admission

20   fees, and negotiate the artist's fee. *Blendingwell Music, Inc. v. Moor-Law, Inc.*, 612

21   F. Supp. 474, 478-81 (D. Del. 1985).

22         Indeed, "sponsorship" of an infringing performance by no means requires

23   malicious or substantial conduct by the defendant.  For example, in *Blendingwell*

24   *Music*, the defendant was the owner and occupier of a restaurant bar that provided

25   live music to its patrons. *Id.* at 477-78.  Only an outdoor sign advertised the

26   performances, broadly announcing the performance of live country music; only on

27   occasion would the plaintiff advertise a featured artist of national repute in the local

28

1   media. *Id.* at 478. The bar's manager booked local groups, negotiated artists' fees

2   and sometimes charged an admission fee. *Id.* The plaintiff copyright owners sued

3   for direct copyright infringement, contending their copyrighted compositions were

4   publicly performed by the defendant, either live or on the bar's jukebox. *Id.* at 479.

5   The court held in favor of the plaintiffs, stating "[t]here can be no issue as to [the

6   defendant's] liability as a direct or contributory infringer, reasoning that the

7   defendant hired the live bands and operated the jukeboxes. *Id.* at 481.

8   **2.   Live Nation sponsored the infringing performances;**

9   **therefore it is potentially liable.**

10        The Complaint alleges that Live Nation sponsored Jay-Z's infringing public

11   performances. It specifically alleges:

12   •   a ten-year agreement for Live Nation to "sponsor, promote, facilitate

13        and/or finance Jay-Z's live concerts" (Compl. ¶ 23);

14   •   that Live Nation "organized, promoted and/or sponsored" each of Jay-

15        Z's concert tours since 2008 at which *Big Pimpin'* was performed

16        (Compl. ¶¶ 25-27);

17   •   that Live Nation was the proprietor of one or more of the venues at

18        which Jay-Z performed *Big Pimpin'* (Compl. ¶ 28);[2] and

19   •   and that Live Nation "actively promoted, advertised, and facilitated

20        Jay-Z performances of *Big Pimpin'*" (Compl. ¶ 38), selling concert

21        tickets and merchandise.[3] (Compl. ¶ 24.)

22   _____

23   [2]   On this basis alone, Live Nation's motion to dismiss should be denied. See *It's Amore Corp.*, No. 3:08CV570, 2009 WL 1886038, at *5 (holding that being a

24   proprietor of a venue where infringing performances take place will potentially

25   subject the defendant to liability for direct copyright infringement).

26   [3]   See *Broad. Music, Inc. v. Kujo Long, LLC*, No. 1:14-CV-00449, 2014 WL

27   4059711, at *2 (M.D. Pa. Aug. 14, 2014) (holding defendants were liable for direct copyright infringement on the sole basis that they were "responsible for operations"

28   (footnote continued)

524684.2

1   The complaint pleads a cognizable direct copyright infringement claim.

2           **3.**    **Live Nation's cases are inapposite.**

3         Live Nation cites to three district court cases whose facts render no

4   resemblance to the case at issue.  (Motion at 6:27-28 and 7:1-7.)

5   •   *Miller v. Facebook, Inc.*, No. C10-00264, 2010 WL 1292708-WHA

6      (N.D. Cal. Mar. 31, 2010) involves allegations that Facebook infringed

7      the plaintiff's copyright by reproducing and distributing the plaintiff's

8      game.

9   •   *Religious Tech. Ctr. v. Netcom On-Line Commc'ns Svcs, Inc.*, 907 F.

10     Supp. 1361, 1381-82 (N.D. Cal. 1995) involves allegations of direct

11     infringement by a computer bulletin board service for infringement

12     committed by its subscriber.

13  •   *Hermeris, Inc. v. Brandenburg*, No. 10-2531-JAR, 2011 WL 231463

14     (D. Kan. Jan. 23, 2011) involves a defendant that hosted three websites

15     that infringed the plaintiff's copyrights in its online document

16     preparation business.

17        None of these cases is either controlling or on point.  The cases cited by

18  Plaintiff above are both controlling and on point.  The Court should follow

19  Plaintiff's legal authorities.  If it does, the Motion should be denied.

20          **D.**    **Plaintiff States a Claim for Contributory Copyright Infringement.**

21        To state a plausible claim for contributory copyright infringement, Plaintiff

22  need only allege the defendant:  (1) "with knowledge of the infringing activity," (2)

23  "induces, causes, or materially contributes to the infringing conduct of another."

24  *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) (citation

25  omitted).  Plaintiff more than sufficiently pled both elements.

26

27  at the establishment in which the infringing public performances took place).

28

524684.2

OPPOSITION TO DEFENDANT LIVE NATION ENTERTAINMENT, INC.'S MOTION
TO DISMISS OR STAY THE ACTION

1. **Plaintiff sufficiently pled knowledge of Jay-Z's infringement.**

   a. **The requisite knowledge includes constructive knowledge and willful blindness.**

As Live Nation concedes, the requisite "knowledge" for purposes of contributory copyright infringement includes not just actual knowledge, but also constructive knowledge – i.e., "hav[ing] reason to know of the direct infringement." (Motion at 7:19-20.)  In addition, one of the cases Live Nation relies upon heavily notes that "willful blindness" satisfies the "knowledge" requirement for contributory copyright infringement. *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1073 (9th Cir. 2013) ("Willful blindness of specific facts would establish knowledge for contributory liability.").

   b. **The allegations of knowledge are adequate.**

Live Nation argues that Plaintiff did not sufficiently plead that Live Nation knew or had reason to know of (or was willfully blind to) Jay-Z's infringement. (Motion at 7:26-27.)  Live Nation is wrong.  The Complaint – including the reasonable inferences that can be drawn from the allegations – more than adequately alleges the requisite knowledge. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

<u>First</u>, the Complaint alleges Live Nation's knowledge directly:

- "[A]t all relevant times, Live Nation knew that Big Pimpin' infringed upon the Khosara Khosara copyright . . ." (Compl. ¶ 32);
- "Live Nation, with knowledge of the infringing activity of Jay-Z, therefore enabled, induced, caused, and/or contributed to Jay-Z's copyright infringement." (Compl. ¶ 51.)

<u>Second</u>, the Complaint alleges facts from which it could be reasonably

1  inferred that Live Nation knew or should have known of the infringement:

2  • "Live Nation is one of the largest (if not the largest) sponsors,
3  producers, and promoters of live concerts in the world" with "an equity
4  interest in over 100 venues across the United States and beyond"
5  (Compl. ¶ 22);

6  • "in or around April 2008, Live Nation entered into an agreement with
7  Jay-Z and/or his affiliated entities pursuant to which Live Nation
8  agreed to sponsor, promote, facilitate, and/or finance Jay-Z's live
9  concerts and tours for the next ten years." (Compl. ¶ 23.)

10  More specifically, a reasonable inference can be drawn that before signing Jay-Z to
11  a ten-year exclusive contract, Live Nation performed its due diligence on potential
12  legal issues confronting the artist. See *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d
13  1004, 1020 (9th Cir. 2001) (extensive experience in an industry is evidence of
14  constructive knowledge).

15      Third, this Court can and should take judicial notice of the filing of the related
16  *Jay-Z* case in 2007 – i.e., a year before Live Nation signed the ten-year deal with
17  Jay-Z. A reasonable inference is that Live Nation would have learned of the lawsuit
18  as part of the due diligence related to the deal, or would have learned about the
19  lawsuit as part of its ongoing relationship with Jay-Z.

20      The Complaint adequately pleads Live Nation's knowledge. *Gershwin*
21  *Publishing*, 443 F.2d at 1162-63 (manager and promoter of concerts who knew that
22  artists were performing copyrighted compositions liable for contributory
23  infringement).

24                    c.      **Live Nation's cases are inapposite.**

25      Only two of Live Nation's cases pertain to contributory copyright
26  infringement, with none concerning the promotion of performances of infringing
27  material. Both cases are readily distinguishable.

28  524684.2

1    In *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1070 (9th Cir.

2  2013), the plaintiff sold greeting card style messages to telephone users.  Users

3  ignored a notice attached to the digital content that the message could only be

4  forwarded once.  *Id.* at 1070-71.  Plaintiff sued the defendant telephone network for

5  contributory copyright infringement for the acts committed by its users.  *Id.* at 1071.

6  In *Pryor v. Warner/Chappel Music, Inc.*, No. 13-cv-04344-RSWL, 2014 WL

7  2812309 at *2 (C.D. Cal. June 20, 2014), a music publisher registered a composition

8  (misattributing its authorship) and subsequently entered into an agreement with a

9  defendant to sample the composition without the copyright holder's authorization.

10  The plaintiff copyright holders sued the defendant for contributory copyright

11  infringement despite no indication of how the defendant knew or should have

12  known of the copyright holders' claim.  *Id.* at *8.

13    Both *Luvdarts* and *Pryor* bear little resemblance to the facts at issue.  The

14  defendants there had no reason to suspect infringement.  Here, Live Nation had

15  every reason to know of the infringement claim.  The claim against Jay-Z was

16  pending before Live Nation signed a substantial contract with him.  Moreover, Live

17  Nation has been intimately involved with Jay-Z and his concerts since 2008 – a

18  period during which the *Jay-Z* case has remained pending.  (Compl. ¶¶ 24-27.)  It

19  would not be implausible to infer that Live Nation at some point discovered the

20  pending *Big Pimpin'* copyright claim against Jay-Z.  See also 3 Copyright

21  Throughout the World § 41:46 (2014) ("Knowledge of the infringing conduct

22  requires only that the defendant knew that the infringing conduct was occurring . . .

23  and does not require that the defendant knew the legal significance of the activity,

24  e.g. that the copying infringed copyright.").

25

26

27

28

524684.2

-11-

**2.      Plaintiff sufficiently pled that Live Nation induced, caused and materially contributed to Jay-Z's infringement.**

**a.      Live Nation applies an overly stringent legal standard.**

Contrary to the intimations in the Motion, to induce, cause or materially contribute to the infringement, Live Nation need not be actively goading Jay-Z into performing the infringing work.  Nor would Live Nation need to use unlawful means to promote the infringement.

Rather, "[m]aterial contribution turns on whether the activity in question 'substantially assists' direct infringement." *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 944 (9th Cir. 2011) (citation omitted).  Therefore, advertising, scheduling, negotiating and otherwise profiting from an artist's infringing public performance is adequate. *Gershwin*, 443 F.2d at 1162-63 (citing with approval case holding that advertising agency, radio station and packaging agent could be liable as contributory infringers if they knew they were promoting infringing records, even if their actions were lawful); see also *Aiken* ("The entrepreneur who sponsors such a public performance for profit is also an infringer – direct or contributory.") (emphasis added).  Indeed, simply "providing the means for infringement may be sufficient". *Fonovisa*, 76 F.3d at 264, quoting 2 William F. Patry, Copyright Law & Practice §1147.

**b.      The allegations of material contribution are adequate.**

Live Nation's assertion that Plaintiff "has not plausibly allege[d] that Live Nation engaged in conduct to encourage and/or assist Jay-Z's" infringement, (Motion at 10:8-10), is meritless.  The Complaint alleges that:

- "Live Nation provided substantial and integral assistance to the public performances of *Big Pimpin'*, including but not limited to ticketing and promotional services." (Compl. ¶ 49.)

1    • "Live Nation owned and/or had exclusive booking rights at one or more

2        of the venues at which Jay-Z performed *Big Pimpin'* (Compl. ¶ 28) and

3        "profited substantially from Jay-Z's performances of *Big Pimpin'* ",

4        including profits from ticket sales, merchandise, parking and

5        concessions.  (Compl. ¶ 31.)

6    These allegations are adequate under the Ninth Circuit, Supreme Court, and Second

7    Circuit authorities cited *supra*.

8              **c.    Live Nation's cases are inapposite.**

9        On this element of contributory infringement, Live Nation fails to cite to a

10   single case concerning copyright infringement by a sponsor of a public performance.

11   *Tarantino v. Gawker Media*, LLC, No. 2:14-cv-0063-JFW, 2014 WL 2434647 (C.D.

12   Cal. Apr. 22, 2014) concerns a website that posted a link to the website where the

13   plaintiff's screenplay was leaked online.  *A&M Records, Inc. v. Napster, Inc.*, 239

14   F.3d 1004 (9th Cir. 2001) concerns an Internet service that facilitated the

15   transmission of digital audio files to its users.  *Actuate Corp. v. Fid. Nat'l*, No. C-

16   14-02274-RS, 2014 WL 4182093 (N.D. Cal. Aug. 22, 2014) concerns a defendant

17   who distributed the plaintiff's software outside the scope of its license.  *Viesti*

18   *Assocs., Inc. v. Pearson Educ., Inc.*, No. 12-cv-02240-PAB, 2013 WL 4052024 (D.

19   Colo. Aug. 12, 2013) concerns a textbook publisher who exceeded the licensed use

20   of plaintiff's photographs.  *Muench Photography, Inc. v. Pearson Educ., Inc.*, No.

21   13-cv-03937-WHO, 2013 WL 6172953 (N.D. Cal. Nov. 25, 2013) similarly

22   concerns a defendant textbook publisher who permitted third parties to distribute

23   educational publications with unauthorized reproductions of plaintiff's photographs.

24       None of these cases – most of which are non-binding on this Court – concern

25   sponsors of public performances.  Under Ninth Circuit authorities such as *Louis*

26   *Vuitton* and *Fonovisa*, as well as the seminal Second Circuit *Gershwin* case, all cited

27   *supra*, the allegations of Live Nation's material contribution to the infringement are

28

524684.2

-13-

1   more than adequate.

2   **E.   Plaintiff States a Claim for Vicarious Copyright Infringement.**

3   To state a plausible claim for vicarious infringement, a plaintiff need only

4   allege the defendant:  (1) "has the right and ability to supervise the infringing

5   activity" and (2) "a direct financial interest in such activities." *Fonovisa, Inc.*, 76

6   F.3d at 262 (citation omitted).  Plaintiff more than sufficiently pled both elements.

7   **1.   Plaintiff sufficiently pled Live Nation's right and ability to**

8   **supervise Jay-Z's infringing activity.**

9   Plaintiff sufficiently pled Live Nation's right and ability to supervise Jay-Z's

10  infringing activity.

11  First, Plaintiff alleged that Live Nation "owned and/or had exclusive booking

12  rights at one or more of the venues at which Jay-Z publicly performed Big Pimpin'."

13  (Compl. ¶¶ 28, 61.)  A reasonable inference is that the owner of a venue has the

14  power to control who plays the venue.  In other words, if Live Nation did not want

15  Jay-Z performing at one of its venues, it had the legal and practical right and ability

16  to tell him to perform elsewhere.  See *Range Road Music*, 668 F.3d at 1153

17  (allegations that defendants exercised control over performance venue were

18  adequate for purposes of pleading vicarious liability); *Fonovisa*, 76 F.3d at 263

19  (operator of swap meet had right and ability to super vise infringing activity).

20  Second, Plaintiff alleged that "Live Nation had certain rights to supervise

21  and/or control the planning, promotion and/or execution of Jay-Z's concert

22  performances, including those at which Jay-Z performed the infringing work Big

23  Pimpin'" (Compl., ¶ 59), and that "Live Nation has sponsored and promoted Jay-Z

24  and his tours and performances, sold Jay-Z concert tickets and merchandise, and

25  assisted in organizing and producing Jay-Z tours and concerts."  (Compl., ¶ 24.)

26  Courts have held that active involvement in the performances that incorporate

27  infringing content can be adequate to demonstrate the right and ability to supervise

28

the infringing activity.  See, e.g., *Gershwin*, 443 F.2d at 1163 ("Although CAMI had no formal power to control either the local association or the artists for whom it served as agent, it is clear that the local association depended upon CAMI for direction in matters such as this, that CAMI was in a position to police the infringing conduct of its artists, and that it derived substantial financial benefit from the actions of the primary infringers. . . . It was, therefore, responsible for, and vicariously liable as the result of, the infringement by those primary infringers."); *Polygram Int'l Pub., Inc. v. Nevada/TIG, Inc.*, 855 F. Supp. 1314, 1328 (D. Mass. 1994) "[D]efendants are found to have 'control' over a performance if they . . . 'either actively operate or supervise the operation of the place wherein the performances occur, or control the content of the infringing program.").

Plaintiff's allegations of Live Nation's right and ability to supervise or control are adequate.[4]

### 2.   <u>Plaintiff sufficiently pled Live Nation's direct financial interest in the infringing activity.</u>

Live Nation contends that, to state a claim for vicarious copyright infringement, Plaintiff must allege a direct "causal relationship between Jay-Z's performance of *Big Pimpin'* specifically and Live Nation's profit from Jay-Z performances in general." (Motion at 15:9-13.)  In other words, according to Live Nation, before even filing the complaint, a plaintiff must be able to prove that the infringing work was the reason for revenue generated by the defendant from the performance.

_____

[4]   True to form, Live Nation's cases on this issue are inapposite.  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) concerns a defendant search engine that provided linking to infringing material.  *Luvdarts, LLC,* 710 F.3d at 1068, discussed *supra*, concerns a defendant telephone network on which users distributed, without permission, plaintiff's greeting card messages.  Finally, *Miller*, 2010 WL 1292708, also mentioned *supra*, concerns allegations that Facebook infringed plaintiff's copyright by reproducing and distributing plaintiff's game.

524684.2

-15-

1    Live Nation is wrong on the law.  For nearly a century, courts have held that a
2    venue that hosts the performance of infringing music inherently benefits financially.
3    Indeed, that is so even if the music itself is performed for free.  *Herbert v. Shanley*
4    *Co.*, 242 U.S. 591, 594-95 (1917) (hotel company liable for copyright infringement
5    where hosted free performance of infringing music); *Dreamland Ball Room*, 36 F.2d
6    at 355 ("The authorities are, we believe, unanimous in holding that the owner of a
7    dance hall at whose place copyrighted musical composition is played in violation of
8    the rights of the copyright holder is liable, if the playing be for the profit of the
9    proprietor of the dance hall.").  Courts continue to construe the "direct financial
10   benefit" requirement broadly in cases involving the performance of infringing
11   music.  See *Range Road Music*, 668 F.3d at 1153 (plaintiff adequately pled
12   vicarious infringement claim where it said defendants "financially benefitted <u>from
13   the performance venue</u>") (emphasis added); *Polygram Int'l Pub., Inc. v.*
14   *Nevada/TIG, Inc.*, 855 F. Supp. 1314, 1330 (D. Mass. 1994) ("In cases involving the
15   performance of music, however, courts have sometimes relied on an inferred,
16   overall benefit that a performance of music confers on an establishment, rather than
17   attempting to discern the 'direct' benefit.").

18       Moreover, the Ninth Circuit has held that even in a non-music infringement
19   case, a defendant obtains a direct financial benefit where the infringement it
20   supervised was a "draw" for its customers.  *Fonovisa, Inc.*, 76 F.3d at 263.  Here,
21   Plaintiff alleges that the performance of *Big Pimpin'* was a draw to Jay-Z concerts
22   hosted by Live Nation.  (Compl. ¶¶29-30) (alleging that *"Big Pimpin'* has been
23   mentioned regularly in concert previews as one of the songs Jay-Z was expected to
24   perform" and that "a substantial percentage of people who purchased tickets to Jay-
25   Z's shows hoped he would perform *Big Pimpin'*, expected he would perform *Big*
26   *Pimpin'*, and would have been disappointed if he had not performed *Big Pimpin'*"").
27   That is adequate.  See 3 Melville B. Nimmer, Nimmer on Copyright, §12.04[A][2]
28

524684.2

-16-

1   ("It seems scarcely an exaggeration to posit that 'an obvious and direct financial
2   interest' is now understood to encompass a possible, indirect benefit").

3          Regardless, as directly alleged, "the hope and expectation that Jay-Z would
4   perform *Big Pimpin'* drew a significant percentage of attendees to the concerts,
5   thereby increasing Live Nation's profit." (Compl., ¶ 62.) Therefore, the allegations
6   pass muster even under Live Nation's impossibly stringent standard.

7          Finally, Live Nation's cases are inapposite; none concerns organizers or
8   sponsors of public performances of infringing music.[5]

9          In sum, Plaintiff adequately pled vicarious copyright infringement (as well as
10  direct and contributory infringement).[6]

11  **IV.   THE COURT SHOULD DENY THE REQUEST TO STAY THIS**
12  **ACTION.**

13         Live Nation asks this Court for what can best be characterized as "an
14  indefinite stay." Although Live Nation implies the stay would be lifted following
15  the trial in the *Jay-Z* case, which is currently scheduled for October 2015, the actual
16  request is far broader – i.e., "the Court should stay this action pending resolution of
17  the Fahmy-Jay Z Matter." (Motion at 17:4-5.) (As the Court knows, a jury trial
18  does not always – or even often – signal the resolution of a civil case.)

19  [5]   Although not directly on point, one case cited by Live Nation actually supports
20  Plaintiff's position. See *Adobe Sys. Inc. v. Canus Prod. Inc.*, 173 F. Supp. 2d 1044,
      1050-51 (C.D. Cal. 2001) (relying on the Ninth Circuit's analysis from *Fonovisa*
21  and focusing on whether the infringing conduct was a "draw" for customers to the
22  venue to determine whether there was a direct financial benefit).

23  [6]   To the extent the Court disagrees, leave to amend should be granted because
24  Plaintiff could add additional facts that would respond to Live Nation's criticisms.
      Fed. R. Civ. P. 15(a)(2) (leave to amend should be granted "freely . . . when justice
25  so requires"); *Breier v. Northern Cal. Bowling Proprietors' Ass'n*, 316 F.2d 787,
26  789-90 (9th Cir. 1963) (if the underlying facts or circumstances may be a proper
      subject of relief for the plaintiff, it should be given the opportunity to present its
27  claims on the merits).

28  524684.2

OPPOSITION TO DEFENDANT LIVE NATION ENTERTAINMENT, INC.'S MOTION
TO DISMISS OR STAY THE ACTION

The request for a stay should be denied.  While stays are generally disfavored, indefinite stays like that requested by Live Nation are subject to the strictest of scrutiny.  Live Nation's request does not pass muster.

## A.   **Indefinite Stays are Rarely Appropriate.**

"Generally, stays should not be indefinite in nature." *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).  Therefore, when evaluating a request to stay an action pending a related proceeding, "a stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time." *Id.*, quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979); see also *Ortega Trujillo v. Conover & Co. Communications, Inc.*, 221 F.3d 1262 (11th Cir. 2000) (characterizing stay pending resolution of related case as "indefinite stay" and reversing stay order as abuse of discretion); *Fleming v. Coverstone*, 2010 WL 4955546, at *2 (S.D. Cal. Dec. 1, 2010) (denying motion to stay pending related case where the court found it unlikely that the claims in the other case would be concluded within a reasonable time).

## B.   **Live Nation's Request Is Based on a Highly Unlikely Scenario.**

Live Nation's request for a stay pending resolution of the Jay-Z case is based on the following logic:

- The related *Jay-Z* case is scheduled to proceed to trial in October 2015;
- The verdict in the *Jay-Z* case will tell us whether the allegedly infringing work at issue (*Big Pimpin'*) actually infringes plaintiff's copyright;
- If *Big Pimpin'* doesn't infringe, then Live Nation cannot be held liable for promoting concerts at which it was performed;
- Waiting a few months to see what happens in *Jay-Z* could potentially save the parties money and the Court time.

524684.2

-18-

OPPOSITION TO DEFENDANT LIVE NATION ENTERTAINMENT, INC.'S MOTION
TO DISMISS OR STAY THE ACTION

1      Live Nation's reasoning is based on a scenario that, while theoretically

2 possible, is actually almost certain <u>not</u> to occur.  More specifically, Live Nation

3 assumes that all of the following will happen:

4      • The *Jay-Z* case will actually proceed to trial in October 2015, as

5        opposed to settling before or during trial or being continued.

6      • The verdict in the *Jay-Z* case will be conclusive and binding herein –

7        i.e., the *Jay-Z* case will <u>not</u> settle after the trial and will <u>not</u> be

8        appealed.

9      • The burden on Live Nation in litigating this case between now and

10       October 2015 will be great.

11      The chance of Live Nation's scenario actually occurring is almost nil.  It is

12 nearly certain that the *Jay-Z* case will either (a) settle at some point (whether before,

13 during, or after trial), or (b) be appealed.

14      • If scenario (a) occurs, then this case has been delayed for no reason.

15       No finding in the *Jay-Z* case will be binding herein, and the parties will

16       be starting from scratch months or even years later.

17      • If scenario (b) occurs, then, based on recent experience, a ruling from

18       the Ninth Circuit will be issued no sooner than 2018.[7]  And there is no

19       guarantee that the Ninth Circuit will affirm whatever occurred in the

20       district court.  It is possible the Ninth Circuit will reverse and remand

21       for further proceedings, thus delaying a final ruling in the *Jay-Z* case

22       for months if not years.  It is also possible the Ninth Circuit's ruling

23       will not be dispositive herein.[8]

24

[7]  In fact, 2018 may be an aggressive estimate.  Recently, civil appeals in the Ninth
25 Circuit are being set for oral argument about two years after the filing of the notice
26 of appeal.  An opinion may not issue until months after the oral argument.

27 [8]  For example, Live Nation has not indicated that it would stipulate to liability if
28 (footnote continued)

524684.2

OPPOSITION TO DEFENDANT LIVE NATION ENTERTAINMENT, INC.'S MOTION
TO DISMISS OR STAY THE ACTION

1   In sum, putting this case on hold pending resolution of the *Jay-Z* case is

2   illogical and inequitable under the circumstances.  See *Jellinek v. Advance Products*

3   *& Systems, Inc.*, 2013 WL 692969 (S.D. Cal. Feb. 26, 2013) (denying motion to stay

4   pending related case because a six-month delay was not reasonable and "there is no

5   guarantee that whichever party does not prevail in *Jellinek I* would not appeal any

6   final judgment . . . creating additional delays."); see also *Standard Havens Products,*

7   *Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1366 (Fed. Cir. 1991) (refusing to stay

8   appeal pending reexamination because reexamination decision would be non-final

9   decision, and the plaintiff indicated it intended to file civil action to challenge the

10   adverse decision; therefore "it may be many months before the reexamination matter

11   is finally adjudicated.").

12   **C.   The Factors Cited by Live Nation Weigh Against a Stay.**

13   In the Motion, Live Nation cites to three factors that courts may review when

14   evaluating a potential stay.  (Motion at 17:12-19.)  None of the factors favors a stay.

15   First, Plaintiff will be harmed because of the stay.  "Courts have recognized

16   that a civil plaintiff has an interest in having her case resolved quickly." *ESG*

17   *Capital Partners LP v. Stratos*, 22 F. Supp. 3d 1042, 1046 (C.D. Cal. 2014).

18   Plaintiff is no different.[9]  Moreover, if discovery is delayed until resolution of the

19   *Jay-Z* case, it is conceivable that witnesses with knowledge will leave Live Nation,

20   will leave Los Angeles, and/or will pass away.  Plaintiff's claims against Live

21   Nation, as well as the likelihood of a full and fair result, could be harmed if any of

22   those scenarios come to pass.

23   Jay-Z is found liable in the underlying case.  In other words, even if the Ninth

24   Circuit rules definitively in the *Jay-Z* case, it is likely that Live Nation would still

25   try to contest liability and damages in this case.

26   [9]   Live Nation says that the *Jay-Z* case "has been pending for *seven years*" (Motion

27   at 17:25) (emphasis added), implying that Plaintiff, through no fault of his own, has
     waived his interest in having his rights vindicated in a timely manner.  Nonsense.

28

 1      Second, Live Nation overstates the burden on it and the Court.  Due to Live
 2  Nation's filing of its Motion and the automatic stay of discovery under Rule 26 of
 3  the Federal Rules of Civil Procedure, the activity in this case between now and
 4  October will be modest.  And if the *Jay-Z* case proceeds through a full appeal, it is
 5  no exaggeration that few persons or entities in this country are as well positioned as
 6  Live Nation to weather the storm of litigating this case concurrently with that
 7  appeal.  Declaration of Keith J. Wesley, Ex. A (Live Nation 10-K statement
 8  showing revenues in 2014 in excess of $6.8 billion and assets in excess of $5.9
 9  billion).

10      Finally, the orderly course of justice does not favor a stay.  As described
11  *supra*, the most likely scenarios are that the *Jay-Z* case either (a) will settle at some
12  point (at which point this case will have to start from scratch), or (b) will be
13  appealed (at which point this case will be delayed for years, with no guarantee of a
14  ruling that dictates the outcome herein).  *Sanrio, Inc. v. Ronnie Home Textile Inc.*,
15  2015 WL 1062035, at *4 (C.D. Cal. Mar. 10, 2015) (denying defendants' motion to
16  stay, stating "the convenience of the court in the management of its cases, and the
17  efficient use of judicial resources, normally does not favor granting a stay because
18  the court has an interest in clearing its docket.").

19      Live Nation has not demonstrated the wisdom or equity of a stay.  The case
20  should proceed under the Federal Rules of Civil Procedure.

21
22
23
24
25
26
27
28

524684.2

OPPOSITION TO DEFENDANT LIVE NATION ENTERTAINMENT, INC.'S MOTION
TO DISMISS OR STAY THE ACTION

1  **V.**     **CONCLUSION.**

2       For the foregoing reasons, this Court should deny the Motion.

3

4  DATED:  May 11, 2015              BROWNE GEORGE ROSS LLP
                                     Peter W. Ross
5                                    Keith J. Wesley
                                     Christopher M. Kolkey
6

7

8                                    By  _____ s/ Keith J. Wesley _____
                                              Keith J. Wesley
9                                    Attorneys for Plaintiff Osama Ahmed Fahmy

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
OPPOSITION TO DEFENDANT LIVE NATION ENTERTAINMENT, INC.'S MOTION
TO DISMISS OR STAY THE ACTION

# DECLARATION OF KEITH J. WESLEY

I, Keith J. Wesley, declare and state as follows:

1.    I am an attorney at law, duly admitted to practice before this Court and all courts of the State of California.  I am a partner with the firm of Browne George Ross LLP, counsel of record for Plaintiff Osama Ahmed Fahmy in this matter.  I have firsthand, personal knowledge of the facts set forth below and if called as a witness could competently testify thereto.

2.    Attached hereto as Exhibit A is a true and correct copy of a relevant excerpt from defendant Live Nation Entertainment Inc.'s 10-K filing for the fiscal year ending December 31, 2014.

Executed this 11th day of May, 2015, at Los Angeles, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

                                    _____s/ Keith J. Wesley_____
                                    Keith J. Wesley

524684.2

-1-

## **PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 2121 Avenue of the Stars, Suite 2400, Los Angeles, CA 90067.

On May 11, 2015, I served true copies of the following document(s) described as **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT LIVE NATION ENTERTAINMENT, INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) OR STAY THE ACTION PENDING RESOLUTION OF RELATED CASE; DECLARATION OF KEITH J. WESLEY** on the interested parties in this action as follows:

Sandra A. Crawshaw-Sparks, Esq.                    Attorneys for Defendant
Susan L. Guiterrez, Esq.                                       Live Nation Entertainment, Inc.
PROSKAUER ROSE LLP
2049 Century Park East, 32nd Floor
Los Angeles, CA  90067
Tel:  (310) 557-2900
Fax:  (310) 557-2193
Email:  scrawshaw@proskauer.com
              sgutierrez@proskauer.com

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 11, 2015, at Los Angeles, California.


/s/ Venus Bernardo
Venus Bernardo