UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:15-cv-01158-CAS (PJWx) | Date | June 8, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY v. LIVE NATION ENTERTAINMENT, INC., ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Khowoonsun Chong | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Jonathan Gottfried | Susan Gutierrez |
| | Alexander Kaplan |

**Proceedings:** DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OR, IN THE ALTERNATIVE, STAY PROCEEDINGS (Dkt. No. 15, filed April 16, 2015)

## I. INTRODUCTION

Plaintiff Osama Ahmed Fahmy filed this action on February 18, 2015, against Live Nation Entertainment, Inc. ("defendant" or "Live Nation") and Does 1 through 10. The gravamen of the complaint is that defendant has infringed plaintiff's public performance rights in a copyrighted musical composition entitled *Khosara, Khosara* by sponsoring and promoting concerts at which rapper Jay-Z performed the song *Big Pimpin'*, which contains an unauthorized sample of *Khosara, Khosara*. Plaintiff alleges claims for (1) direct copyright infringement, (2) contributory copyright infringement, and (3) vicarious copyright infringement. See generally Compl.

On April 16, 2015, defendant filed a motion to dismiss the complaint for failure to state a claim or, in the alternative, to stay the action pending resolution of a related case also involving the alleged infringement of *Khosara, Khosara* by *Big Pimpin*'. Dkt. No. 15. Plaintiff filed an opposition on May 11, 2015. Dkt. No. 21. Defendant filed a reply on May 26, 2015. Dkt. No. 22. On June 8, 2015, the Court held a hearing on the matter, at which counsel for both parties appeared and argued. Having considered the parties' arguments, and for the reasons stated below and in open court, the Court grants in parts and denies in part the motion to dismiss, and denies the motion to stay without prejudice to its being renewed after the pleadings have closed and the timeline of the related case is more certain.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-01158-CAS (PJWx) | Date | June 8, 2015 |
| Title | OSAMA AHMED FAHMY v. LIVE NATION ENTERTAINMENT, INC., ET AL. | | |

## II. BACKGROUND

### A. Allegations of the Complaint

For purposes of the motion to dismiss, the Court assumes the truth of the allegations of the complaint, summarized as follows. Plaintiff is the nephew and heir of the late Baligh Hamdy ("Hamdy"), an Egyptian music composer. Compl. ¶ 3. In 1957, Hamdy authored an original musical composition entitled *Khosara, Khosara*. Id. ¶ 7. In 1960, a copyright in Hamdy's name for *Khosara, Khosara* was registered under Egyptian law. Id. ¶ 10. Hamdy retained full copyright ownership of the *Khosara, Khosara* composition until his death in 1993, when that ownership passed to his three siblings. Id. ¶¶ 11–12. Since December 2002, plaintiff and other Hamdy heirs have owned the copyright. Id. ¶ 12. Plaintiff "holds a general power of attorney to act on behalf of" the other co-owners. Id. Although the *Khosara, Khosara* copyright has been licensed over the years, plaintiff alleges that his copyright ownership "is valid and subsisting, and has been in full force and effect at all times material to this action." Id. ¶ 14.

In 1999, music producer Timothy Mosley, also known as Timbaland ("Mosley"), came into possession of a recording of *Khosara, Khosara*. Id. ¶ 17. Shortly thereafter, Mosley and popular rapper Shawn Carter, also known as Jay-Z ("Jay-Z") created and recorded the rap song entitled *Big Pimpin'*, which incorporates a significant portion of *Khosara, Khosara* as its recurring "hook." Id. ¶¶ 18–19. *Big Pimpin'* was first released in December 1999, and has subsequently appeared on other Jay-Z albums and collaborations. Id. ¶ 21. Plaintiff contends that the song "is an unauthorized derivative work that infringes upon the *Khosara, Khosara* copyright." Id. ¶ 20.

Defendant Live Nation is one of the largest sponsors, producers, and promoters of live musical concerts in the world. Id. ¶ 22. It owns, operates, has exclusive booking rights for, or has an equity interest in over a hundred performance venues. Id. In April 2008, defendant entered into an agreement with Jay-Z and affiliated entities, pursuant to which defendant agreed to "sponsor, promote, facilitate, and/or finance Jay-Z's live concerts and tours for the next ten years." Id. ¶ 23. Since entering into this agreement, defendant "has sponsored and promoted Jay-Z and his tours and performances, sold Jay-Z concert tickets and merchandise, and assisted in organizing and producing Jay-Z tours and concerts." Id. ¶ 24.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-01158-CAS (PJWx) | Date | June 8, 2015 |
| Title | OSAMA AHMED FAHMY v. LIVE NATION ENTERTAINMENT, INC., ET AL. | | |

Jay-Z has "performed *Big Pimpin'*, or a variation thereof, at every single one of his concerts from 2008 to the present." Id. ¶ 27. Additionally, *Big Pimpin'* "has been mentioned regularly in concert reviews as one of the songs Jay-Z had performed," and in "concert previews as one of the songs Jay-Z was expected to perform." Id. ¶ 29. According to plaintiff, "the hope and expectation that Jay-Z would perform *Big Pimpin'* drew a significant percentage of attendees to the concerts, thereby increasing [defendant's] profit." Id. ¶ 62. Plaintiff asserts that these public performances infringe his copyright in *Khosara, Khosara*. Id. ¶ 36.

Defendant owned or had exclusive booking rights at one or more of the venues at which Jay-Z performed *Big Pimpin'*. Id. ¶ 28. Plaintiff alleges that defendant "has profited substantially from Jay-Z's performances of *Big Pimpin'*, including, but not limited to, profits from ticket sales, merchandise, parking, concessions, and other revenue streams." Id. ¶ 31. Plaintiff also alleges that defendant at all relevant times "knew that *Big Pimpin'* infringed upon the *Khosara, Khosara* copyright," and "had an expectation that Jay-Z would perform *Big Pimpin'* " at his concerts, but nevertheless "continued to sponsor, promote, and facilitate Jay-Z's performances of the infringing work." Id. ¶¶ 32, 40. Plaintiff contends that defendant "provided substantial and integral assistance to the public performances of *Big Pimpin'*, including but not limited to ticketing and promotional services," and never attempted to "stop or mitigate Jay-Z's infringement," but rather "enabled, induced, caused, and/or contributed" to that infringement. Id. ¶¶ 49–51. Finally, plaintiff alleges that defendant "had certain rights to supervise and/or control the planning, promotion and/or execution of Jay-Z's concert performances," and "participated extensively in" the same. Id. ¶¶ 59–60.

### B. The Related Jay-Z Action

On August 31, 2007, plaintiff Fahmy filed suit against Jay-Z, Mosley, and a host of other defendants not including Live Nation. That action, which also involves alleged infringement of *Khosara, Khosara* by *Big Pimpin'* and related works, is styled Fahmy v. Jay-Z, et al., No. 2:07-cv-05715-CAS-PJWx (C.D. Cal. filed Aug. 31, 2007). That case, hereinafter referred to as the "Jay-Z Action," is currently set for trial on October 13, 2015.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-01158-CAS (PJWx) | Date | June 8, 2015 |
| Title | OSAMA AHMED FAHMY v. LIVE NATION ENTERTAINMENT, INC., ET AL. | | |

### III. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

   A.   Legal Standard

   A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.' " Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

   In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

   Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. &

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-01158-CAS (PJWx) | Date | June 8, 2015 |
| Title | OSAMA AHMED FAHMY v. LIVE NATION ENTERTAINMENT, INC., ET AL. | | |

Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001); In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

    **B.**    **Analysis**

To state a claim for copyright infringement, a plaintiff must allege "(1) ownership of a valid copyright; and (2) that the defendant violated the copyright owner's exclusive rights under the Copyright Act." Ellison v. Robertson, 357 F.3d 1072, 1076 (9th Cir. 2004) (citing 17 U.S.C. § 501(a)); see also Range Road Music, Inc. v. East Coast Foods, Inc., 668 F.3d 1148, 1153 (9th Cir. 2012) (describing a prima facie case as consisting of (1) valid copyright ownership and (2) copying of original elements of the work). The Ninth Circuit "recognize[s] three doctrine of copyright liability: direct copyright infringement, contributory copyright infringement, and vicarious copyright infringement." Ellison, 357 F.2d at 1076. As the Supreme Court has recognized, "the lines between direct infringement, contributory infringement, and vicarious liability are not clearly drawn." Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 435 n.17 (1984) (internal quotation marks and citations omitted). Plaintiff alleges, and defendant moves to dismiss, a claim under each theory of liability.

        1.    Direct Copyright Infringement

To state a claim for direct copyright infringement, a plaintiff must allege (1) "that he owns the copyright" and (2) "that the defendant himself violated one or more of the plaintiff's exclusive rights under the Copyright Act." Ellison, 357 F.3d at 1076. Defendant does not contest plaintiff's allegations of copyright ownership. But defendant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-01158-CAS (PJWx) | Date | June 8, 2015 |
| Title | OSAMA AHMED FAHMY v. LIVE NATION ENTERTAINMENT, INC., ET AL. | | |

argues that because defendant's alleged infringement is based solely on Jay-Z's performances of *Big Pimpin'*, plaintiff has not alleged that defendant itself violated plaintiff's exclusive rights under the Copyright Act. See Dkt. No. 15-1 (Memo. Supp. Mot.) at 5–7. In opposition, plaintiff argues that defendant may be held directly liable as a sponsor and promoter of the performances, and as a proprietor of one or more of the venues at which *Big Pimpin'* was performed. See Dkt. No. 21 (Opp'n) at 5–8.

     The Supreme Court has stated in dicta that "[t]he entrepreneur who sponsors . . . [an infringing] public performance for profit is also an infringer—direct or contributory." Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 157 (1975); see also Range Road Music, 668 F.3d at 1153 (quoting this portion of Aiken, but only considering a theory of vicarious liability with regard to public performances at the defendants' restaurant and bar). Citing this dictum, district courts on which plaintiff relies have found that the proprietor of an establishment where infringing live and recorded musical performances take place can be held liable. These courts have neglected to specify whether such liability is direct, contributory, or vicarious, or have stated that the liability could be "either" direct or contributory. See Broad. Music, Inc. v. Crawford, No. 1:12-cv-01903-JLT, 2014 WL 1285660, at *4–6 (E.D. Cal. Mar. 28, 2014) (holding pub operator liable for unauthorized playing of songs on jukebox, without stating whether the liability was direct or indirect); Broad. Music, Inc. v. It's Amore Corp., No. 3:08-cv-570, 2009 WL 1886038, at *5 (M.D. Pa. June 30, 2009) (holding that proprietors of a restaurant where infringing live performances took place were "liable for the infringement that occurred at the restaurant"); Blendingwell Music, Inc. v. Moor-Law, Inc., 612 F. Supp. 474, 478, 481 (D. Del. 1985) (concluding that there "can be no issue as to [the defendant's] liability as a direct or contributory infringer" where the owner of a bar hired live bands and operated jukeboxes that played infringing music).

     But in a thoroughly researched opinion, another district court has stated: "In cases involving live performances by musicians or disc jockeys . . . the only bases for liability of the nightclub owner are vicarious and contributory liability, because the owner is not performing the work." Polygram Int'l Publ'g, Inc. v. Nevada/TIG, Inc., 855 F. Supp. 1314, 1322 (D. Mass. 1994). Noting that the "leading cases on third-party liability . . . were careful to find an actual infringement by the alleged direct infringer," the Polygram court contrasted live performances at music venues with "direct liability cases—for instance, those involving jukeboxes and radios," in which "a lounge owner who runs his

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:15-cv-01158-CAS (PJWx) | Date | June 8, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY v. LIVE NATION ENTERTAINMENT, INC., ET AL. | | |

own establishment can be held directly liable for playing music without authorization because the owner himself is 'performing' the music as that term is defined in the Copyright Act." Id. at 1321 (citing 17 U.S.C. § 101).[1]

The Court finds persuasive Polygram's reasoning that a music venue proprietor may only be held secondarily liable for the infringement of an artist it hires, and finds that reasoning equally applicable where the defendant is alleged to be a venue proprietor and concert promoter. It makes sense for such a defendant to be held secondarily liable for the infringing performance of a musical artist it sponsors, as contributory or vicarious infringement is separate from and dependent on direct infringement. See Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1163 (2d Cir. 1971) (holding concert promoter contributorily and vicariously liable for the "actions of the primary infringers," musical performers); Danjaq, S.A. v. MGM/UA Commc'ns Co., 773 F. Supp. 194, 201 (C.D. Cal. 1991) ("Contributory infringement . . . plainly does not lie without primary infringement."). It makes substantially less sense to hold the concert promoter directly liable along with the artist, where there would be no infringement without the artist's performance. See Ellison, 357 F.3d at 1076 (explaining that direct infringement requires a showing "that the defendant himself violated one or more of the plaintiff's exclusive rights" (emphasis added)); New World Music Co. v. Tampa Bay Downs, Inc., No. 8:07-CV-398, 2009 WL 35184, at *4 (M.D. Fla. Jan. 6, 2009) ("Where a copyright infringement case involves live performances by musicians or disc jockeys, the owner of the establishment may be subject to vicarious liability . . . . However, secondary liability cannot be imposed without first establishing direct infringement by the performer."). Because imposing direct liability under these circumstances would collapse the distinction between primary and secondary liability, the Court concludes that plaintiff's direct infringement claim must fail.

---

[1] Under the Copyright Act, "to 'perform' a work means to recite, render, play, dance, or act it, either directly or by any means of any device or process." 17 U.S.C. § 101. Thus, a club that plays music for its customers over a radio, jukebox, or similar "device"—unlike a proprietor who hires live musicians—appears to "play" and "perform" music within the meaning of the Copyright Act.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-01158-CAS (PJWx) | Date | June 8, 2015 |
| Title | OSAMA AHMED FAHMY v. LIVE NATION ENTERTAINMENT, INC., ET AL. | | |

Of the three district court cases plaintiff cites that suggest that a music venue proprietor or similar defendant can be a direct infringer, only two involved live performances (as opposed to sound recordings), and none separately analyzed direct infringement. Additionally, one of the cases involving a live performance reasoned that the proprietor was liable for infringement of the bands it hired "under the normal agency rule of *respondeat superior*," Blendingwell Music, 612 F. Supp. at 481—but the Ninth Circuit has stated that "[v]icarious copyright liability" (not direct liability) "is an 'outgrowth' of respondeat superior," A&M Records v. Napster, Inc., 239 F.3d 1004, 1022 (9th Cir. 2001) (quoting Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 262 (9th Cir. 1996)). And tellingly, the seminal Gershwin case analyzed a concert promoter's contributory and vicarious liability, but did not suggest that a promoter could be held liable as a direct infringer, and implied that the promoter was not a "primary infringer." 443 F.3d at 1162–63. For these reasons, the Court concludes that the complaint does not contain sufficient allegations to sustain a direct infringement claim, and dismisses that claim with leave to amend.

2. Contributory Copyright Infringement

" 'One who, [1] with knowledge of the infringing activity, [2] induces, causes or materially contributes to the infringing conduct of another may be liable as a contributory [copyright] infringer.' " Ellison, 357 F.3d at 1076 (emphasis and brackets in original) (quoting Gershwin, 443 F.2d at 1162). Defendant argues that plaintiff has not sufficiently alleged either element.

a. Knowledge of Infringing Activity

In the Ninth Circuit, "the knowledge requirement for contributory copyright infringement . . . include[s] both those with actual knowledge and those who have reason to know of direct infringement." Ellison, 357 F.3d at 1076 (emphasis in original) (citing Napster, 239 F.3d at 1013). "Willful blindness of specific facts" is also sufficient to "establish knowledge for contributory liability." Luvdarts, LLC v. AT&T Mobility, LLC, 710 F.3d 1068, 1073 (9th Cir. 2013). However, "more than a generalized knowledge by the [defendant] of the possibility of infringement" is required. Id. at 1072.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-01158-CAS (PJWx) | Date | June 8, 2015 |
| Title | OSAMA AHMED FAHMY v. LIVE NATION ENTERTAINMENT, INC., ET AL. | | |

Plaintiff supports the knowledge element of this claim with the allegation that defendant "knew that *Big Pimpin'* infringed upon the *Khosara, Khosara* copyright, but nevertheless continued to sponsor, promote, and facilitate Jay-Z's performances of the infringing work." Compl. ¶ 32. Although defendant argues that the Court should disregard the allegation as a mere conclusion, additional facts alleged in the complaint or judicially noticeable, as well as reasonable inferences that can be drawn therefrom, support plaintiff's claim of knowledge. Plaintiff alleges that defendant (1) is a large concert sponsor, producer, and promoter and (2) entered into an agreement with Jay-Z to "sponsor, promote, facilitate, and/or finance Jay-Z's live concerts and tours" for a ten-year period, Compl. ¶¶ 22–23. The Court also takes judicial notice of the fact that the Jay-Z Action was filed in 2007, before defendant signed its deal with Jay-Z.[2] Viewing the complaint in the light most favorable to plaintiff, it is reasonable to infer that defendant—a sophisticated business entity that entered into a multi-year deal with an internationally known artist and has since been heavily involved in promoting and facilitating Jay-Z's tours—would have been put on notice of the alleged infringement. Because of this reasonable inference and plaintiff's direct allegation of knowledge, dismissing this claim on the ground that defendant did not know about the alleged infringement would be premature.

The most on-point case defendant cites in opposition is Pryor v. Warner/Chappell Music, Inc., No. 13-cv-04344-RSWL, 2014 WL 2812309 (C.D. Cal. June 20, 2014). In that case, a company called "Caesar's Music" registered the composition to a song titled *Bumpin' Bus Stop*, misattributing its authorship, and later entered into a sampling agreement with "TB Music" to sample and create derivative works based on that song. Id. at *2. The plaintiffs (including *Bumpin' Bus Stop*'s true composer) alleged that TB Music gave unauthorized permission to other defendants "to use, exploit, and distribute a sample of the composition" by releasing a different record, *Get Down*, that sampled *Bumpin' Bus Stop*. Id. The court held allegations that TB Music "knew or had reason to

---

[2] See Fed. R. Evid. 201; United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (explaining that a court may take judicial notice "of proceedings in other courts . . . if those proceedings have a direct relation to matters at issue"). The Court does not, however, presume the truth of the allegations in that related case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                'O'

| Case No. | 2:15-cv-01158-CAS (PJWx) | Date | June 8, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY v. LIVE NATION ENTERTAINMENT, INC., ET AL. | | |

know of the infringement upon initial release of the recording" insufficient to plead knowledge of infringement, because plaintiffs could not allege "how" TB Music—as opposed to a co-defendant—knew or had reason to know that" *Get Down* included an unauthorized sample of *Bumpin' Bus Stop*. Id. at *8. Pryor is distinguishable, however, because it involved no alleged or judicially noticeable facts from which the Court could infer that TB Music had a reason to know that the accused song included an unauthorized sample—especially because the copyright registration misattributed the earlier composition's authorship. Here, there is no indication that the authorship of *Khosara, Khosara* had been obscured, and it is plausible that plaintiff could prove that the Jay-Z Action put defendant on constructive notice of the alleged infringement.

Faulkner v. National Geographic Society, 211 F. Supp. 2d 450 (S.D.N.Y. 2002), which defendant cites for the proposition that constructive knowledge cannot be inferred from the filing of the Jay-Z Action, does not persuade the Court that dismissal of the contributory knowledge claim is appropriate at this stage of the litigation. In that case, photographers and writers whose work had been published in *National Geographic* magazines argued that several defendants had infringed their intellectual property rights by republishing their work in a digital collection of *National Geographic* content called "The Complete National Geographic." Id. at 454. One defendant, Kodak—a manufacturer and developer of photographic equipment—had entered into a deal whereby it placed advertising messages in the digital collection, and the plaintiffs sought to hold Kodak contributorily liable for that involvement. Id. at 455, 473–74. Noting that Kodak, through its advertising and promotion, may have materially contributed to the infringement, the court nonetheless granted summary judgment because there was no evidence Kodak knew of the infringing activity. Id. at 475. The court rejected plaintiffs' argument that Kodak was put on notice when copyright infringement claims were first brought against parties other than Kodak, reasoning:

> While it is clear Kodak has had actual knowledge of adverse claims since 1997, it is not apparent that Kodak should have known from the existence of these claims that The Complete National Geographic products infringed plaintiffs' copyrights. As this opinion makes clear, to the extent plaintiffs' infringement claims have not been dismissed, disputed issues of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-01158-CAS (PJWx) | Date | June 8, 2015 |
| Title | OSAMA AHMED FAHMY v. LIVE NATION ENTERTAINMENT, INC., ET AL. | | |

> fact remain regarding whether or not plaintiffs created their photographs and texts as works for hire for NGS. Because the work-for-hire issue requires resolution by a trier of fact, it is difficult to conclude that Kodak should have known simply from the fact of these lawsuits that plaintiffs owned the copyrights at issue. Plaintiffs' argument merely begs the question to be answered by the lawsuit.
>
> The situation here is different from that found in the counterfeit music or software context, where courts have been willing to impute knowledge to defendants who have received cease-and-desist letters and other warnings. In the piracy context, there usually are clear indicators that an accused product is infringing, such as packaging and unusually low prices. Here, the question of infringement turns on complex analysis of contractual arrangements going back twenty years and more. In other words, plaintiffs' allegations of infringement are anything but readily verifiable, making Kodak's lack of knowledge regarding true copyright ownership objectively reasonable.

Id. at 474–75 (footnotes omitted). The court also noted that Kodak "made a reasonable inquiry regarding the intellectual property rights of contributors and received satisfactory assurances," further undermining the constructive knowledge argument. Id. at 475.

     Unlike the present motion—where the Court must take plaintiff's allegations as true—Faulkner was decided on a motion for summary judgment, with a full evidentiary record. Id. at 454–55. The Faulkner court did not hold that a copyright infringement lawsuit against other persons can never put a defendant on constructive notice of infringement; rather, it found there was insufficient evidence in one case from which to find that one defendant knew of infringement. Here, there is no evidentiary record, and the Court cannot say with certainty that discovery will not produce other "indicators that [the] accused [song] [was] infringing." Id. at 475. Additionally, unlike in Faulkner, there is no indication that defendant "made a reasonable inquiry regarding . . . intellectual

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-01158-CAS (PJWx) | Date | June 8, 2015 |
| Title | OSAMA AHMED FAHMY v. LIVE NATION ENTERTAINMENT, INC., ET AL. | | |

property rights . . . and received satisfactory assurances." Id. Finally, on a Rule 12(b)(6) motion, the Court cannot gauge—as the Faulkner court could on a broader motion for summary judgment—the complexity and merits of the direct infringement issues on which defendant's contributory liability may hinge. Accordingly, the Court does not find defendant's arguments concerning lack of knowledge to justify dismissal of the contributory infringement claim at the pleading stage.

                b.        Material Contribution to Infringement

"Material contribution turns on whether the activity in question 'substantially assists' direct infringement." Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc., 658 F.3d 936, 943 (9th Cir. 2011) (citation omitted). "Put differently, liability exists if the defendant engages in 'personal conduct that encourages or assists the infringement.'" Napster, 239 F.3d at 1019 (quoting Matthew Bender & Co. v. West Publ'g Co., 158 F.3d 693, 706 (2d Cir. 1998)).

Plaintiff argues that this element is adequately pleaded through allegations that defendant "provided substantial and integral assistance to the public performance of *Big Pimpin'*, including but not limited to ticketing and promotional services," and also "owned and/or had exclusive booking rights at one or more of the venues at which Jay-Z performed *Big Pimpin'*." Compl. ¶¶ 49, 31. Defendant, on the other hand, argues that plaintiff's allegations are insufficient because they really pertain to defendant's promotion of Jay-Z concerts as a whole, not specific promotion of *Big Pimpin'*. At least at this stage of the litigation, the Court agrees with plaintiff.

Faulkner, upon which defendant relies, notes that "[a]dvertising or otherwise promoting an infringing product or service may be sufficient to satisfy the material contribution prong" of a contributory infringement claim. 211 F. Supp. 2d at 473–74. Other courts agree. See Columbia Pictures Indus., Inc. v. Redd Home, Inc., 749 F.2d 154, 161 (3d Cir. 1984) (holding defendant liable as a contributory infringer where it conducted "all of the advertising and promotion work" for a retail video store that publicly displayed copyrighted movies); Rogers v. Koons, 751 F. Supp. 474, 481 (S.D.N.Y. 1990) (reasoning that an art gallery that advertised and displayed infringing sculptures "materially contributed to [the sculptor's] infringing conduct"). Plaintiff has

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-01158-CAS (PJWx) | Date | June 8, 2015 |
| Title | OSAMA AHMED FAHMY v. LIVE NATION ENTERTAINMENT, INC., ET AL. | | |

alleged that defendant was extensively involved in advertising and promoting Jay-Z's concerts, that defendant operated or owned at least some of the venues at which Jay-Z performed, and that at each concert, Jay-Z played *Big Pimpin'*, which was a substantial draw for concert-goers. Accordingly, it would be "premature to say that plaintiff[] cannot satisfy the material contribution prong." Faulkner, 211 F. Supp. 2d at 474.

  Although defendant argues that the claim must be dismissed because this promotion and sponsorship was not directed at "Jay-Z's public performance of *Big Pimpin'* specifically," Memo. Supp. Mot. at 10–11, defendant cites no case that actually stands for this proposition. And as the Supreme Court has recognized, cases in which a dance hall or similar business owner retains musical artists to play music to paying customers are classic examples of contributory infringement, even though in many of those cases those proprietors did not promote any specific infringing song or control the song selection played.[3] In sum, the Court concludes that plaintiff has sufficiently alleged a claim for contributory copyright infringement, and that defendant's arguments for dismissal of the claim are better suited for a motion for summary judgment. Accordingly, the motion to dismiss this claim is denied.

  3. Vicarious Copyright Infringement

  "A defendant is vicariously liable for copyright infringement if he (1) "enjoys a direct financial benefit from another's infringing activity" and (2) " 'has the right and ability to supervise' the infringing activity." Ellison, 357 F.3d at 1076 (emphasis omitted) (quoting Napster, 239 F.3d at 1022 (quoting Gershwin, 443 F.2d at 1162)). In Range Road Music, for example, the Ninth Circuit held that a complaint stated a claim

---

[3]See Sony, 464 U.S. at 437 & n.18 (citing the "dance hall cases" as examples of "contributory" infringement); Aiken, 422 U.S. at 157 (stating in dicta that an "entrepreneur who sponsors . . . for profit" a performance by "[a]n orchestra or individual instrumentalist or singer" may be a "contributory" infringer); Buck v. Jewell-La Salle Realty Co., 283 U.S. 191, 198 (1931) ("[K]nowledge of the particular selection to be played or received is immaterial. One who hires an orchestra for a public performance for profit is not relieved from a charge of infringement merely because he does not select the particular program to be played.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                                          'O'

| Case No. | 2:15-cv-01158-CAS (PJWx) | Date | June 8, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY v. LIVE NATION ENTERTAINMENT, INC., ET AL. | | |

for vicarious liability by alleging that "copyrighted musical compositions were publicly performed at the [defendants' restaurant and bar], and plead[ing] specific facts to raise a plausible inference that [defendants] exercised control over and financially benefitted from the performance venue." Id. at 1152–53. Vicarious liability may be imposed "even if the defendant initially lacks knowledge of the infringement." Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 545 U.S. 913, 930 n.9 (2005).

      a.      Financial Benefit

"Financial benefit exists where the availability of infringing material acts as a 'draw' for customers." Napster, 239 F.3d at 1023 (quoting Fonovisa, 76 F.3d at 263–64). "There is no requirement that the draw be 'substantial' " or "quantifi[able]." Ellison, 357 F.3d at 1079.

Plaintiff sufficiently pleads this element by alleging that defendant "has profited substantially from Jay-Z's performance of *Big Pimpin'* " from sources including "ticket sales, merchandise, parking, concessions, and other revenue streams," and that "the hope and expectation that Jay-Z would perform *Big Pimpin'* drew a significant percentage of attendees to the concerts, thereby increasing [defendant's] profit." Compl. ¶¶ 31, 62. These allegations plausibly suggest that *Big Pimpin'* was a "draw" for those who attended Jay-Z concerts, and that defendant profited from the infringing performances.

Defendant resists this conclusion by arguing that plaintiff has not pleaded specific facts to support the inference that defendant's "profit from Jay-Z concerts goes up or down depending on whether or not Jay-Z performs *Big Pimpin'*." Memo. Supp. Mot. at 15. But plaintiff alleges that Jay-Z has performed *Big Pimpin'* "at every single one of his concerts from 2008 to the present." Compl. ¶ 27. This makes it difficult indeed for plaintiff to allege that profits are higher at concerts where Jay-Z performs *Big Pimpin'*. Moreover, plaintiff's allegation that the hope that *Big Pimpin'* would be played "drew a significant percentage to the concerts, thereby increasing [defendant's] profit," leads to the reasonable inference that the performances and associated goods would have been less profitable if Jay-Z had not performed *Big Pimpin'*—the precise contention defendant contends is lacking.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-01158-CAS (PJWx) | Date | June 8, 2015 |
| Title | OSAMA AHMED FAHMY v. LIVE NATION ENTERTAINMENT, INC., ET AL. | | |

Defendant cites no on-point authority for its argument that plaintiff must allege more granular facts detailing the financial benefit from performances of *Big Pimpin'* specifically.[4] Such a requirement would conflict with the "legion" cases "hold[ing] the dance hall proprietor liable for the infringement of copyright resulting from the performance of a musical composition by a band or orchestra whose activities provide the proprietor with a source of customers and enhanced income," without indicating that a plaintiff must prove what the defendant's income would have been if the same band or orchestra did not play the infringing compositions.  See Shapiro, Bernstein & Co. v. H.L. Green Co., 316 F.2d 304, 307 (2d Cir. 1963) (collecting cases); see also In re Aimster Copyright Litig., 334 F.3d 643, 654 (7th Cir. 2003) (explaining that the "canonical illustration" of vicarious infringement "is the owner of a dance hall who hires dance bands that sometimes play copyrighted music without authorization").  Indeed, "[i]n cases involving the performance of music"—which defendant avoids citing—"courts have sometimes relied on an inferred, overall benefit that a performance of music confers on an establishment, rather than attempting to discern the 'direct' benefit."  See Polygram, 855 F. Supp. at 1330–32; Realsongs v. Gulf Broad. Corp., 824 F. Supp. 89, 92 (M.D. La. 1993) (rejecting an argument that radio station could not be held liable for infringing songs played by third-parties who paid flat fees for air time; reasoning that the stations "still have a direct financial interest in the infringing activity if the station is a for-profit enterprise and defendants benefit from its operation"); see also 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 12:04[A][2] (Matthew Bender, Rev. Ed. 2015) (noting that courts including the Ninth Circuit have understood the "direct financial interest" element as "encompass[ing] a possible, indirect benefit" (citing Napster, 239 F.3d at 1022–23)).[5]

---

[4]A leading treatise points out that the Ninth Circuit has found a financial benefit where "the actual receipts to defendant were generalized, rather than traceable directly to the infringement."  3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 12:04[A][2] (Matthew Bender, Rev. Ed. 2015) (citing Fonovisa, 76 F.3d at 262–63).

[5]Despite relying in its own motion largely on cases that do not even involve musical compositions, defendant attempts to distinguish "restaurant and 'dance hall' cases" on the ground that there, "the entire performance(s) constituted recordings or covers of unlicensed, copyrighted works," whereas here, Jay-Z performed without

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-01158-CAS (PJWx) | Date | June 8, 2015 |
| Title | OSAMA AHMED FAHMY v. LIVE NATION ENTERTAINMENT, INC., ET AL. | | |

    b.  Supervision or Control

  The complaint also sufficiently alleges defendant's right to supervise or control the allegedly infringing activity. This element is satisfied where the defendant has "both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so.' " Range Road Music, 668 F.3d at 1155 (quoting Perfect 10, Inc. v. Amazon.com, Inc., 487 F.3d 701, 730 (9th Cir. 2007)).

  First, plaintiff alleges that defendant "owned and/or had exclusive booking rights at one or more of the venues at which Jay-Z publicly performed *Big Pimpin'*," Compl. ¶ 28, making defendant a proprietor of at least one venue at which the alleged infringement took place. Courts have found allegations that a defendant "exercised control over . . . the performance venue" sufficient to allege this element of a vicarious infringement claim. Range Road Music, 668 F.3d at 1153 (emphasis added); see Polygram, 855 F. Supp. at 1328 ("[D]efendants are found to have 'control' over a performance if they 'either actively operate or supervise the operation of the place wherein the performances occur, or control the content of the infringing program.' " (emphasis in original) (quoting H.R. Rep. No. 94-1476, at 159–60 (1976))).

  Second, plaintiff alleges that defendant had "rights to supervise and/or control the planning, promotion and/or execution of Jay-Z's concert performances," and indeed "participated extensively in the planning, promotion, and/or execution of Jay-Z's concert performances." Compl. ¶¶ 59–60. Plaintiff also contends that defendant never "attempt[ed] to stop or mitigate Jay-Z's infringement of *Khosara, Khosara*," id. ¶ 50, implying that defendant had some ability to do so. These allegations also support the

---

authorization portions of *Khosara, Khosara* within his own musical composition. Reply at 12. Although it is true that plaintiff "cites no authority supporting a finding of direct financial interest in these circumstances," id., defendant cites no contrary authority, either. And it is not clear why, for purposes of the financial benefit element, there should be a distinction between (1) an artist performing one or more copyrighted compositions without authorization in a multi-song performance—where liability has been consistently found—and (2) an artist performing a song that prominently copies from a copyrighted composition in a multi-song performance.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:15-cv-01158-CAS (PJWx) | Date | June 8, 2015 |
|---|---|---|---|
| Title | OSAMA AHMED FAHMY v. LIVE NATION ENTERTAINMENT, INC., ET AL. | | |

control element of plaintiff's vicarious infringement claim. See Fonovisa, 76 F.3d at 263 (recognizing that "promoting" and "creating an audience for" a direct infringer can support an inference that the defendants "were in a position to police the direct infringers" and satisfy the control element of a contributory infringement claim).

To the extent defendant argues that it cannot be held vicariously liable because there is no allegation that it selected or controlled the songs Jay-Z would play at concerts, that argument lacks merit. Nearly a century ago, the Supreme Court held that "[o]ne who hires an orchestra for a public performance for profit is not relieved from a charge of infringement merely because he does not select the particular program to be played." Buck v. Jewell-La Salle Realty Co., 283 U.S. 191, 198 (1931). Numerous courts and commentators writing before and after this pronouncement have concurred. See, e.g., H.L. Green Co., 316 F.2d at 307 (holding that a dance hall or similar proprietor is liable "whether or not the proprietor has knowledge of the compositions to be played or any control over their selection"); Dreamland Ball Room v. Shapiro, Bernstein & Co., 36 F.2d 354, 355 (7th Cir. 1929) (affirming judgment against dance hall operators that had no control over "the musical selections to be rendered during an evening's engagement" and "did not know that any musical selection played by the orchestra was copyrighted"); Broad. Music, Inc. v. CDZ, Inc., 724 F. Supp. 2d 9320 (C.D. Ill. 2010) (collecting cases rejecting the argument that defendants "cannot be held vicariously liable for copyright infringement where they exercised no control or supervision over their hired bands"); 3 Nimmer on Copyright § 12:04[A][2] ("[T]he proprietor of a dance hall is liable for infringing performances of the orchestra, even if the orchestra is hired as an independent contractor and exclusively determines the music to be played."). As the First Circuit has explained, the reason defendant's argument has been rejected is that sponsors of musical events "could otherwise reap the benefits of countless violations by orchestras . . . by merely claiming ignorance that any violation would take place." Famous Music Corp. v. Bay State Harness Horse Racing & Breeding Ass'n, Inc., 554 F.2d 1213, 1215 (1st Cir. 1977).

Because plaintiff sufficiently alleges both elements of a vicarious infringement claim, defendant's motion to dismiss this claim is denied.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-01158-CAS (PJWx) | Date | June 8, 2015 |
| Title | OSAMA AHMED FAHMY v. LIVE NATION ENTERTAINMENT, INC., ET AL. | | |

### IV.   MOTION TO STAY

Because two of plaintiff's claims are adequately pleaded, the Court turns to defendant's alternative argument for a stay pending resolution of the Jay-Z Action.

####   A.   Legal Standard

A district court has discretionary power to stay proceedings. See Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). The court "may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." Leyva v. Certified Grocers of Cal. Ltd., 593 F.2d 857, 863 (9th Cir. 1979). However, case management concerns alone are not necessarily a sufficient ground to stay proceedings. See Dependable Highway Express v. Navigators Ins. Co., 498 F.3d 1059, 1066 (9th Cir. 2007). Among the interests to be weighed in deciding whether to stay a pending proceeding are (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." Lockyer v. Mirant Corp., 398 F.3d 1098, 1110 (9th Cir. 2005). " '[I]f there is even a fair possibility that the stay . . . will work damage to someone else,' the stay may be inappropriate absent a showing by the moving party of 'hardship or inequity.' " Dependable Highway Express, 498 F.3d at 1066 (quoting Landis, 299 U.S. at 255). However, "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity.' " Lockyer, 398 F.3d at 1112.

Generally, "[a] stay should not be granted unless it appears likely that the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." Leyva, 593 F.2d at 864. "The proponent of a stay bears the burden of establishing its need." Clinton v. Jones, 520 U.S. 681, 706 (1997).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-01158-CAS (PJWx) | Date | June 8, 2015 |
| Title | OSAMA AHMED FAHMY v. LIVE NATION ENTERTAINMENT, INC., ET AL. | | |

### B. Analysis

Defendant first argues that no damage will result from granting a stay because the Jay-Z Action has been pending for over seven years, and thus plaintiff "could not credibly claim any prejudice from a delay of a few months in the present case proceeding to discovery." Memo. Supp. Mot. at 17. Defendant argues that it, on the other hand, would be unfairly prejudiced by having to spend time and money litigating a secondary infringement action that could be disposed of on collateral estoppel grounds if the alleged direct infringer (Jay-Z) is not found liable. Id. at 18; see Napster, 239 F.3d at 1013 n.2 ("Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party."). For the same reason of possible collateral estoppel, defendant argues that a stay would promote efficiency and "further the orderly course of justice." Id. at 18–19.

Plaintiff responds that defendant's argument that a stay of "a few months" would do no harm is flawed because it assumes that the Jay-Z Action will actually proceed to trial in October 2015 and will not settle after trial or be appealed. Opp'n at 18–19. Plaintiff asserts that: (1) the Jay-Z Action may settle, creating no binding judgment as to direct infringement; (2) if the case is appealed, it could take years for the appeal to be heard, and longer if the case is remanded for further proceedings; and (3) the related case may not be dispositive of the instant action because, for example, even if Jay-Z is found to have directly infringed *Khosara, Khosara*, Live Nation may still contest secondary liability on other grounds. Id. at 18–19. Plaintiff additionally argues that a stay would harm him by compromising his " 'interest in having [his] case resolved quickly,' " id. at 20 (quoting ESG Capital Partners LP v. Stratos, 22 F. Supp. 3d 1042, 1046 (C.D. Cal. 2014)), and could result in the loss of evidence if witnesses die or leave the Los Angeles area. Plaintiff also denies that defendant's litigation burden would be onerous over the next few months, and argues that judicial efficiency favors proceeding with the instant litigation. Id. at 21.

The Court finds defendant's arguments more persuasive. Although the outcome of the Jay-Z Action will not necessarily be dispositive of this case, that outcome will certainly inform this case. As to plaintiff's argument that an appeal in the Jay-Z Action could lengthen the stay, defendant correctly points out that "a final judgment retains its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-01158-CAS (PJWx) | Date | June 8, 2015 |
| Title | OSAMA AHMED FAHMY v. LIVE NATION ENTERTAINMENT, INC., ET AL. | | |

collateral estoppel effect, if any, while pending appeal." Collins v. D.R. Horton, Inc., 505 F.3d 874, 882–83 (9th Cir. 2007) (explaining that the Ninth Circuit has "held that the benefits of giving a judgment preclusive effect pending appeal outweigh any risks of a later reversal of that judgment," in part because the risk can be mitigated through staying the second action or filing a "protective appeal" in the second action). Moreover, plaintiff's concerns about losing witnesses during its pendency are entirely speculative. Still, while there may be reason to grant a stay pending the Jay-Z Action's resolution, the Court declines to do so at this time because (1) plaintiff may file an amended complaint and (2) there is a chance that the Jay-Z Action will not proceed to trial as scheduled, which could inform the length of a potential stay and the propriety of granting one. Therefore, the motion is denied without prejudice to its being renewed after the pleadings are closed and the Court has a more concrete sense of whether trial in the related action will proceed in October.

## V. CONCLUSION

In accordance with the foregoing, defendant's motion to dismiss is **GRANTED IN PART** insofar as it seeks to dismiss plaintiff's direct infringement claim, and otherwise **DENIED**. Any First Amended Complaint attempting to address the pleading deficiencies identified herein must be filed no later than **July 8, 2015**. If plaintiff does not file a First Amended Complaint by that date, the Court will dismiss the direct infringement claim with prejudice. Defendant's motion to stay is **DENIED** without prejudice to its being renewed after the pleadings are closed.

IT IS SO ORDERED.

| | 00 | : | 20 |
|---|---|---|---|
| Initials of Preparer | | | CMJ |